IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANDRE R. GRIER, #M04210, Plaintiff, | ) ) ) ) |
| vs. | ) ) Case No. 16−cv−0525−MJR |
| ANDERSON, GOODMAN, R.D. MOORE, CLERY, VAUGHN, BANGERT, and UNKNOWN PARTY Defendants. | ) ) ) ) ) ) ) ) ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Dandre R. Grier, an inmate in Pickneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 that allegedly occurred at Lawrence Correctional Center. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

Page **1** of **14**

>>(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>>(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### The Complaint

Plaintiff's issues with C/O Anderson started when he moved onto Anderson's wing. (Doc. 1, p. 10). Another C/O, Bangert, had been harassing Plaintiff. (Doc. 1, p. 10). Plaintiff wrote grievances and had his father call to complain about Bangert. (Doc. 1, p. 10). As a result, Plaintiff was moved to Anderson's wing. (Doc. 1, p. 10). Anderson began shaking down Plaintiff's cell frequently for no reason. (Doc. 1, p. 10). On one occasion, Plaintiff asked Anderson why he shook down his cell so frequently, and Anderson replied, "I can shake your cell down whenever I fucking feel like it." (Doc. 1, p. 10). Plaintiff asked for his badge number and Anderson gave him a false badge number. (Doc. 1, p. 10). Anderson then said, "What, your [sic] going to have your parents call." (Doc. 1, p. 10). Plaintiff answered affirmatively. (Doc. 1, p. 10). Plaintiff alleges that when his father called the warden about Bangert, the warden told his staff about it instead of confronting Bangert, thus making Plaintiff a target for staff harassment. (Doc. 1, p. 11).

Plaintiff filed a grievance on Anderson, and had his father follow up with Warden Moore when he did not receive a response. (Doc. 1, p. 10). He had also complained about Anderson to other staff members. (Doc. 1, p. 10). Neither the warden nor staff took Plaintiff's complaints about Anderson seriously. (Doc. 1, p. 10).

Plaintiff went to chow on August 1, 2015. (Doc. 1, p. 9). Plaintiff was the last person in line and stopped to talk to his friend, who was serving the trays. (Doc. 1, p. 9). Anderson then approached Plaintiff and said "Put your tray down and get searched." (Doc. 1, p. 9). Plaintiff responded, "What the fuck is you on?" (Doc. 1, p. 9).

Anderson told him to "put your fucking tray down." (Doc. 1, p. 9). By this time, Anderson was up in Plaintiff's face and touching the left side of his arm. (Doc. 1, p. 9). Plaintiff went to put his tray down, and as he did so, he turned slightly to the right. (Doc. 1, p. 9). Anderson then pushed Plaintiff against the wall with both hands. (Doc. 1, p. 9). Plaintiff alleges that he was not posing a threat at that time, and that he was complying with Anderson's instructions. (Doc. 1, p. 9). Plaintiff was then allegedly pepper sprayed, thrown to the ground, and cuffed up. (Doc. 1, p. 9). After he was cuffed up, Anderson, Goodman, and Vaughn ran his head into the wall. (Doc. 1, p. 9).

As a result of the August 1, 2015 incident, Plaintiff has suffered from a bruised cornea on his right eye, nerve damage in his left thumb and wrist, headaches, and blurred vision. Plaintiff was taken straight to segregation after the alleged assault. (Doc. 1, p. 12-13). Approximately three to four hours later, Clary came to his cell and asked Plaintiff if he wanted to see the nurse, as the nurse was making her rounds. (Doc. 1, p. 13). Plaintiff said yes. (Doc. 1, p. 13). However, once the nurse walked up to the cell, Clary told her that Plaintiff refused medical treatment. (Doc. 1, p. 13). Plaintiff alleges that statement was a lie. (Doc. 1, p. 13). Plaintiff told the nurse he did not refuse, and then described his medical problems with his right eye, left wrist, left thumb, and headaches. (Doc. 1, p. 13). The nurse asked Plaintiff he had any knots, and he said that he didn't know. (Doc. 1, p. 13). The nurse said, "okay," and then walked off and never returned. (Doc. 1, p. 13).

Page **4** of **14**

Plaintiff complained to Clary again on August 2, 2015 that he had not received medical care, and Clary again allegedly refused to call Plaintiff medical attention. (Doc. 1, p. 14). Plaintiff also alleges that Clary refused to give him his dinner tray on the same day that Goswell and Anderson served him his disciplinary ticket for the events of August 1. (Doc. 1, p. 14).

Sgt. Harper interviewed Plaintiff on August 2, 2015, and took his statement. (Doc. 1, p. 13-14). On August 4, 2015, Sgt. Harper came and brought Plaintiff to his office. (Doc. 1, p. 14). Plaintiff spoke to Director Stock from Springfield, who assured Plaintiff that he was "on his side" and asked if he had received medical attention or a shower. (Doc. 1, p. 14). Plaintiff told him he had not gotten either. (Doc. 1, p. 14). Plaintiff spoke to Stock, Freeman, and Harper about his injuries, and Freeman took pictures of them. (Doc. 1, p. 15). Stock told Plaintiff an investigator from Springfield would be contacting him to take another statement. (Doc. 1, p. 15). Plaintiff finally received medical attention on August 4, 2015. (Doc. 1, p. 15). He was transferred to Pickneyville the next day. (Doc. 1, p. 15).

## Discussion

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into eight counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review.

**Count 1 – Excessive Force claim against Defendant Anderson for the events of August 1, 2015, including pushing Plaintiff, pepper spraying him, pushing him into the ground, and running his head into the wall**

**Count 2 - Excessive force claim against Goodman and Vaughn for running Plaintiff's head into the wall on August 1, 2015 while he was handcuffed**

**Count 3 - Deliberate indifference claim against Anderson, Goodman, and Vaughn for not taking Plaintiff directly to health care after the incident**

**Count 4 - Deliberate indifference claim against Clary for refusing to get Plaintiff medical attention for his injuries on several occasions prior to August 4, 2015.**

**Count 5 – Deliberate indifference claim against unknown nurse Jane Doe for refusing to treat Plaintiff's injuries on August 1, 2015**

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

**Count 6 – Due process violation claim for being placed in segregation after Plaintiff was transferred to Pickneyville**

**Count 7- Claim for violating prison policy by not taking Plaintiff to health care after the August 1, 2015 incident**

**Count 8 – Failure to supervise claim against Warden Moore for refusing to discipline Bangert appropriately and sharing Plaintiff's father's phone call about Bangert with the other guards, including Anderson**

**Counts 1** and **2** survive threshold review. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or

Page **6** of **14**

restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Plaintiff has alleged that he was complying with orders when he was shoved, pepper-sprayed, and jumped on. He has further alleged that the guards shoved his head into the wall after he was handcuffed. This is sufficient to state a claim for excessive force. **Counts 1 and 2** shall proceed.

Although Defendants Anderson, Goodman, and Vaughn are not medical providers, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise." *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Thus Defendants Anderson, Goodman, and Vaughn, who perpetrated the assault, and then allegedly prevented Plaintiff from getting immediate medical attention for his injuries, may be found liable for deliberate indifference to Plaintiff's need for medical care. At this stage, it cannot be determined whether the actions of Defendants Anderson, Goodman, and Vaughn resulted in Plaintiff being denied medical care or otherwise constituted deliberate indifference to Plaintiff's serious medical needs. Therefore, Plaintiff's Count **3** against these Defendants cannot be dismissed.

Likewise, Plaintiff's **Count 4** and **Count 5** survive.  In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir.2012) (internal citations and quotations omitted). *See also Farmer v. Brennan,* 511 U.S. 825, 842 (1994); *Perez v. Fenoglio,* 792 F.3d 768, 777–78 (7th Cir.2015).  Plaintiff has alleged that Clary repeatedly delayed his medical treatment by lying to the nurse about Plaintiff's condition and by refusing to summon medical help for Plaintiff.  Likewise, Plaintiff has alleged that he told the nurse about his injuries on August 1, 2015, but she did nothing, and he was not seen for them until August 4, 2015.  Those allegations are sufficient to state a claim against Clary and the unknown nurse.

The Court notes that the wording of Plaintiff's complaint suggests at times that there were multiple nurses by using plural and gender-neutral language.  But the body of the complaint only contains allegations against one unknown nurse, so to the extent that Plaintiff has attempted to include multiple John/Jane Does, those defendants are dismissed for failure to bring claims against them.

Plaintiff has also attempted to state a claim for keeping him in segregation after he has transferred. As an initial matter, it appears that all of the named defendants are Lawrence, not Pickneyville, staff members. Lawrence staff members would not be personally involved in placement decisions at Pickneyville and cannot be held liable on those grounds.

Additionally, "being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process." *Holly v. Woolfolk,* 415 F.3d 678, 679 (7th Cir. 2005), *citing Sandin v. Conner,* 515 U.S. 472, 485–86 (1995); *Paige v. Hudson,* 341 F.3d 642, 643 (7th Cir. 2003). An inmate has no due process liberty interest in remaining free from administrative segregation because such segregation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484; *Montgomery v. Anderson,* 262 F.3d 641, 643 (7th Cir. 2001). An inmate has no liberty interest in remaining in the general prison population. *Williams v. Ramos,* 71 F.3d 1246, 1248 (7th Cir. 1995). Administrative segregation placement for the purposes of institutional safety and security does not trigger a due process right to a hearing. *See Higgs v. Carver,* 286 F.3d 437, 438 (7th Cir. 2002). Thus Plaintiff's **Count 6** that he was placed in segregation does not state a claim upon which relief can be granted.

Plaintiff has alleged that the prison guards also violated the Illinois Administrative Code by failing to take him to health care after the assault. Even if officials violated departmental rules, the matter does not implicate the Constitution.

Violations of state law are not, in and of themselves, actionable as constitutional violations. *See, e.g., Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (explaining that Section 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations); *Archie v. City of Racine,* 847 F.2d 1211, 1216–17 (7th Cir. 1988) (a violation of state law does not give rise to an actionable § 1983 claim unless it independently violates the Constitution or federal law). Plaintiff's **Count 7** is accordingly **DISMISSED**.

Plaintiff holds Warden Moore responsible in **Count 8** because Warden Moore told Anderson that Plaintiff had complained about Bangert and instructed his father to complain about Bangert. As an initial matter, Plaintiff's allegations are nothing more than speculation. Plaintiff speculates that the warden told the staff about Plaintiff's complaints instead of disciplining Bangert. But Plaintiff's allegations are equally consistent with the warden taking his complaints seriously; Plaintiff was moved out of Bangert's cell block. And Plaintiff's complaint also states that Plaintiff told Anderson himself that his father would call the warden to complain about Anderson. Even if the Court construed this as a claim for failure to properly train staff, it would still fail to state a claim. As the Seventh Circuit has noted, "failure to train claims are usually maintained against municipalities, not against individuals and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry*, 266 F.3d

724, 739-40 (7th Cir. 2001). Plaintiff's allegations in **Count 8** that the warden did not act appropriately with his staff after he complained about another C/O must be dismissed.

Finally, Plaintiff has named Bangert in the caption of this action, but he has not leveled any allegation against him other than generalized harassment. Plaintiff has not described the form the alleged harassment took, or when it occurred. A complaint "must provide enough details about the subject matter of the case to present a story that holds together." *Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x. 614, 616 (7th Cir. 2011) (*citing Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010)). Bangert is entitled to notice of the particulars of Plaintiff's claim so that he may prepare an adequate defense. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff has not provided specific incidents as to Bangert that could form the basis of a potential claim. Therefore Bangert will be **DISMISSED without prejudice** for failure to state a claim.

## Pending Motions

Plaintiff has two motions currently pending — a motion for service at government expense (Doc. 4) and a motion for recruitment counsel (Doc. 3). As Plaintiff has already been granted leave to proceed IFP, (Doc. 6), his motion for service at government expense is **MOOT**. (Doc. 4). The remaining defendants will be served at government expense. Plaintiff's motion for recruitment of counsel is referred to Magistrate Judge Williams for disposition. (Doc. 3).

### Disposition

IT IS HEREBY ORDERED that COUNTS 6 and 7 fail to state a claim upon which relief may be granted, and thus are DISMISSED with prejudice. Defendant Moore is DISMISSED with prejudice. COUNT 8 is dismissed without prejudice and Bangert is DISMISSED from this action without prejudice.

IT IS ORDERED that the Clerk of Court shall prepare for Defendants Anderson, Goodman, Clary, and Vaughn: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is DIRECTED to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Defendant until such time as Plaintiff has identified him or her by name in a properly filed amended complaint. Plaintiff is ADVISED that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

IT IS FURTHER ORDERED that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the

Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be

required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: June 29, 2016**

                                                          s/ MICHAEL J. REAGAN
                                                          **U.S. Chief District Judge**